IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

W. W. MCDONALD LAND CO., et al.,

        Plaintiffs,

v.                                                 CIVIL ACTION NO.  2:11-cv-00418

EQT PRODUCTION COMPANY, et al.,

        Defendants.

**CLARIFICATION OF MEMORANDUM OPINION AND ORDER**

Pending before the court is the plaintiffs' Motion for Clarification [Docket 221]. The plaintiffs seek clarification of my Memorandum Opinion and Order, *W.W. McDonald Land Co. v. EQT Prod. Co.*, No. 2:11-cv-00418, 2013 WL 6098497 (S.D. W. Va. Nov. 21, 2013). For the reasons discussed below, the motion is **GRANTED** insofar as I offer the clarifications below.

    **I.   Background**

This case arises out of a dispute over royalty payments related to fourteen oil and gas well leases. The plaintiffs are owners of land subject to those leases. The plaintiffs contend that *Estate of Tawney v. Columbia Natural Resources, L.L.C.*, 633 S.E.2d 22 (W. Va. 2006), prohibits the defendants from deducting "post-production" costs from royalty payments. On November 21, 2013, I held that "[u]nless a lease provides otherwise, lessees must deliver the gas to the market, in a marketable condition, free of all costs of production. The costs of production include any 'post-production' costs incurred to market the gas." *W.W. McDonald Land Co. v. EQT Prod. Co.*, No. 2:11-cv-00418, 2013 WL 6098497, at *10 (S.D. W. Va. Nov. 21, 2013). I further held that

"*Tawney*'s heightened specificity requirements do not obligate lessees to pay royalties on lost volumes." *Id.*

I then proceeded to analyze the individual leases at issue. I determined that two of the leases, (l) and (m), permitted the defendants to deduct monetary costs, specifically "compression, desulphurization, and transportation to the extent [that those costs] were reasonable and actually incurred." *Id.* at 15. I also determined that each lease obligated the defendants to pay royalties only on the gas actually sold at market; the defendants were not obligated to pay royalties on unsold gas. *See id.* at 12-16.

The plaintiffs seek clarification on two issues: (1) which monetary expenses the defendants may deduct under leases (l) and (m) and the manner in which those deductions may be taken, and (2) whether the defendants must pay royalties on gas used as fuel to run pipeline compressors.

**II. Monetary Deductions**

The plaintiffs present evidence that before 2004, the defendants took monetary deductions for "personnel costs, indirect costs, production management costs, depreciation and return on capital investment." (*See* EQT Prod. Co.'s Supp. of Disc. Resp. [Docket 222-1], ¶ 1). After 2004, the defendants have taken deductions for, among other things, "meals and entertainment," "uniforms," meter operation and repair, and "personal property taxes." (*See* 2011 Gathering Cost of Service, Brenton District [Docket 222-2], at 2). The plaintiffs argue that these deductions are not specifically contemplated by leases (l) and (m). The relevant clauses in those leases, which are identical, read as follows:

> If the gas should be sold at some point other than at the well, then any selling price in excess of Fifteen Cents (15¢) per [Mcf] received by the Lessee shall be adjusted downward to reflect a reasonable charge for *compressing, desulphurization and /or transporting* gas from the well to the point of sale.

(Lease (l) [Docket 131-12], at 9 (emphasis added)).

"When the language of a written instrument is plain and free from ambiguity, a court must give effect to the intent of the parties as expressed in the language employed and in such circumstances resort may not be had to rules of construction." *Cotiga Dev. Co. v. United Fuel Gas Co.*, 128 S.E.2d 626, 631 (W. Va. 1962). A lessee is not permitted to take deductions from royalties unless the lease, among other things, "identif[ies] with particularity the specific deductions the lessee intends to take from the lessor's royalty[.]" Syl. Pt. 10, *Estate of Tawney v. Columbia Natural Res., L.L.C.*, 633 S.E.2d 22, 24 (W. Va. 2006). The provisions at issue are not ambiguous. They permit deductions only for "compressing, desulphurization and/or transporting gas." I **FIND** that meals and entertainment, uniforms, meter operations and repair, and personal property taxes are not costs of compression, desulphurization, or transportation. I further **FIND** that deductions for "personnel costs, indirect costs, production management costs, depreciation and return on capital investment," are too vague to be specifically related to compression, desulphurization, or transportation. These costs are not identified with what I predict the Supreme Court of Appeals of West Virginia would find to be sufficient "particularity." Accordingly, these costs may not be deducted pursuant to lease (l) and (m).

The plaintiffs also complain that even for deductions particularly specified in leases (l) and (m), the defendants have taken them improperly by charging them as a flat rate. "[B]y allocating certain monetary deductions per district and estimating expenses, Defendants took monetary deductions beyond those contemplated under leases (l) and (m) and this Court's order." (Mem. in Supp. of Pls.' Mot. for Clarification [Docket 222], at 4). The plaintiffs cite deposition testimony of Rick Crites, former EQT Production Director of Revenue Accounts, and Jimmie Sue Smith, former vice president for EQT Energy, to show that the EQT entities charge lessors a standard, flat

rate for deductions, which they call a "gathering rate." (*See* Crites Dep. [Docket 221-3], at 103-04; Smith Dep. [Docket 221-4], at 46-49). The plaintiffs argue that charging a standard gathering rate, rather than the particular costs associated with each individual well, violates *Wellman*'s holding that deductions must be "actually incurred" and "reasonable." Syl. Pt. 5, *Wellman v. Energy Res., Inc.*, 557 S.E.2d 254, 256 (W. Va. 2001). I agree with the plaintiffs in theory. Charging a flat rate for gathering costs is not permitted under *Wellman* because, where a lease permits deductions, a lessee may only deduct costs that are "actually incurred" with respect to those particular wells covered under the leases at issue. The charges reflected in the flat rate may or may not have been actually incurred in order to produce gas from the wells included in leases (l) and (m). But at this stage, I cannot determine whether the defendants' method of assessing deductions is improper. At trial, the defendants must present evidence establishing that costs deducted with respect to leases (l) and (m) were actually incurred and reasonable. *See id.* Therefore, I do not decide whether the defendants' method of assessing monetary costs is permissible.

### III. Fuel Gas

The plaintiffs also seek clarification on the issue of gas used as fuel to power the defendants' compressors ("fuel gas"). Currently, the defendants operate a number of compressor stations along gathering lines in order to move gas from the wellhead to the interstate pipeline connection. The compressors consume the plaintiffs' gas during their operation. The plaintiffs argue that the defendants should not be permitted to use fuel gas free of charge or royalty.

This issue is subsumed in my holding that "lessees have no general duty to pay for lost volumes." *W.W. McDonald Land Co. v. EQT Prod. Co.*, No. 2:11-cv-00418, 2013 WL 6098497, at *10 (S.D. W. Va. Nov. 21, 2013). In my prior Memorandum Opinion and Order, I determined that

> [v]olume losses are not "deductions" of costs in the same sense as marketing or

> transportation costs. . . . Under *Wellman* and *Tawney*, the lessee has a general duty to market the gas produced, under which the lessee must bear all costs incurred in converting the product to a marketable condition and bringing it to a market. *See* Syl. Pt. 4, *Wellman*, 557 S.E.2d 254; Syl. Pt. 1, *Tawney*, 633 S.E.2d 22. The lessee does not receive payment for lost and unaccounted for gas that is not delivered to the market. Rather, the lessee receives payment only for gas that is actually sold. Therefore, when the lessee pays a royalty on those proceeds, there is nothing to deduct; the lessee was never paid for undelivered volumes of gas. Volume losses are not costs that are deducted from a royalty, unlike the monetary deductions that concerned the *Wellman* and *Tawney* courts.

*Id.* at 9. After finding that lessees have no general duty to pay for lost volumes, I reviewed each lease at issue to determine whether their individual provisions required royalty payments for lost volumes. I found that they did not. The lease provisions stated that royalties should be paid on gas "produced and marketed," "marketed," "sold," "produced, saved and marketed," or "produced and sold." *See id.* at 12-16. Despite my holdings, the plaintiffs now argue that fuel gas should be considered a monetary cost of "producing, marketing, and transporting" gas, which West Virginia law obligates lessees to bear unless a lease provides otherwise. *See* Syl. Pt. 4, *Wellman*, 557 S.E.2d at 256. The plaintiffs then discuss whether the leases in question permit the use of fuel gas free of charge.

To clarify my prior Memorandum Opinion and Order, lessees have no general duty to pay for unsold volumes. This includes fuel gas consumed in compressor stations. Like volumes of gas lost or unaccounted for due to pipeline leaks or metering inaccuracies, gas consumed as fuel to power compressors is not sold or marketed. Lessees are not generally obligated to pay royalties on unsold gas because lessees receive no payment for this gas. Further, the individual leases at issue each require payment of royalties only on volumes that are sold at market. *See W.W. McDonald Land Co.*, 2013 WL 6098497, at *12-16. Therefore, the holdings in my Memorandum Opinion and Order, *W.W. McDonald Land Co.*, 2013 WL 6098497, relating to lost volumes apply equally to

volumes consumed as fuel gas; the defendants are not obligated to pay royalties on these volumes.

### IV. Conclusion

The plaintiffs' Motion for Clarification [Docket 221] is **GRANTED** insofar as I have discussed above.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: January 21, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE